IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2010

## STATE OF TENNESSEE v. LADARIUS TYREE SPRINGS

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 267009     Barry A. Steelman, Judge**

_____

**No. E2010-00786-CCA-R3-CD - Filed November 8, 2010**

_____

The defendant, Ladarius Tyree Springs, pled guilty to one count of aggravated burglary, a Class C felony. Pursuant to the plea agreement, the Hamilton County Criminal Court sentenced the defendant to six years incarceration suspended to intensive probation after the service of eleven months and twenty-nine days in confinement. While on probation, the defendant pleaded guilty to assault. A violation of probation warrant issued and, following a revocation hearing, the trial court ordered the defendant to serve the remainder of his sentence in confinement. In this appeal as of right, the defendant contends that the trial court erred in denying him an alternative sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Ladarius Tyree Springs.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, District Attorney General; and C. Matthew Rogers, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Hamilton County grand jury indicted the then eighteen-year-old defendant for one count of aggravated burglary and two counts of aggravated robbery occurring on December 19, 2007. On August 1, 2008, the defendant pled guilty to one count of aggravated burglary and the remaining counts were dismissed. Pursuant to the plea agreement, the trial court sentenced the defendant to six years as a Range I, standard offender to be served on

supervised probation following the service of eleven months and twenty-nine days incarceration. At sentencing, the defendant received pretrial jail credit from December 19, 2007 until August 1, 2008.

On September 4, 2008, the defendant was arrested for simple assault, to which he ultimately pled guilty. A violation of probation report followed based upon this new arrest. Following the revocation of the defendant's probation, on August 31, 2009, the trial court entered an amended judgment sentencing the defendant to six years to be served on community corrections. On November 4, 2009, the trial court rescinded the community corrections order after the defendant was unable to find a community corrections program that would accept him. On March 15, 2010, the trial court entered a second amended judgment ordering the defendant to serve his six year sentence in the custody of the Tennessee Department of Correction, with applicable jail credit. This timely appeal followed.

At the February 23, 2009 revocation hearing, the State presented the testimony of David Lane, an officer with the Tennessee Department of Probation and Parole. Mr. Lane testified that he had supervised the defendant's probationary sentence. He said that he had an opportunity to meet with the defendant only two times before he was arrested for assault. Although he had never had the chance to visit the defendant's home, Mr. Lane alleged a curfew violation in the violation of probation report based upon the defendant's arrest occurring at 3:00 a.m. Mr. Lane testified that the arrest report for the assault indicated that the defendant had participated "in a group assault" that did not involve weapons or alcohol.

The defendant admitted at the hearing that he had violated the terms of his probation. He acknowledged Mr. Lane's testimony as true and accurate. He explained that his parents "weren't really there for [him]" growing up. He said that he was placed in foster care when he was ten or eleven years old because his mother "wasn't doing what she was supposed to do" concerning the care of him and his six siblings and because she "got on drugs real bad." His father was "in and out of jail" throughout his childhood.

The defendant testified that he had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder. He said that intelligence testing during school showed that his intelligence quotient (IQ) "wasn't right all the way up there."[1]

The defendant told the court that he knew that he had "messed up . . . [but he had] been sitting behind that wall thinking it's time for [him] to grow up and be a real man." He explained that he had been employed at several restaurants while in high school and that he

---

[1] When asked by the trial court, defense counsel said that the defendant had an IQ of 71.

wanted to obtain his general equivalency diploma (GED) if returned to probation. He said that he did not want to go to prison because he was frightened by stories he had heard about it. On cross-examination, the defendant denied that the assault involved any gang activity. He also said that he did not use alcohol or illegal drugs.

When questioned by the trial court, the defendant said that he would live with his sister if granted probation. He acknowledged that the assault arrest occurred within a month of being placed on probation.

At the conclusion of the February 23, 2009 revocation hearing, the trial court found that the defendant had violated the terms of his probation by the new arrest and by being out past curfew. He reserved the sentencing issue to allow the defendant an "opportunity to look into some kind of a residential program . . . where he's going to have some sort of structure." The trial court added that "although I think punitive measures are necessary, I want to try to give him the opportunity to do something with some structure before I do send him on to that [prison] environment." The trial court stated that it "looked at him on the witness stand and I don't really want to send him to the penitentiary at what he presented here . . . . I will send him if he doesn't . . . show anything any better than what he's shown so far."

As previously discussed, the record reveals that the defendant was placed on community corrections supervision in August 2009. However, the trial court rescinded its August 21, 2009 order on November 4, 2009 based upon a determination by community corrections personnel that the defendant could not be placed in their program.[2] On March 15, 2010, an additional hearing was held concerning the defendant's sentence. From this hearing, we can glean that the defendant had spent a substantial amount of time, "about two years," in the custody of the Hamilton County Jail.

Michelle Johnson, an internal affairs investigator with "the local CCA Silverdale facility" – a community corrections agency, testified that she investigated an incident that led to the defendant being transferred from the facility back to the jail. She said that on December 26, 2009, the defendant was involved in an altercation with seven to eight inmates. The defendant swung "what appeared to be a lock in a sock" at several inmates. Ms. Johnson conducted a search of the defendant's cell and discovered the "lock in a sock" and several gang-related notes indicating that the defendant was a member of the Traveling Vice Lords. The defendant was transferred to the jail based upon this incident and "numerous disciplinary problems," which had required him to be housed in the segregation unit eight times.

---

[2] It appears from the record that these actions all occurred via court order and that no hearings were held. There are no transcripts relevant to these orders contained in the record on appeal.

Hamilton County Sheriff's Department Deputy Marc Stockman testified that he prepared an incident report concerning the defendant on January 10, 2010. The defendant and another inmate became involved in an altercation because the other inmate had been throwing urine at the defendant. When the defendant was moved to another location, a "plastic shank" was discovered among his personal belongings inside a property box under the defendant's bed.

The defendant denied his involvement in the altercation at the community corrections facility. He said that he did not have anything in his hand. He denied ownership of the "lock in the sock" and implied that it could have belonged to someone else because it was a two-man cell. He denied ownership of the shank found in his property box at the jail. The defendant said that he had "been controlling [his] temper since [he] got locked up" and that he wanted a chance at probation. However, he admitted that he had verbally threatened a guard in February 2010 because the guard "made [him] mad."

Defense counsel acknowledged that the trial court had allowed some opportunity to address the defendant's rehabilitative needs but that nothing was "to be found in our current system." Defense counsel asked the trial court to place the defendant on intensive probation so that the defendant could address these needs outside the penitentiary setting.

The trial court held that intensive probation would not be structured enough for the defendant. The trial court found that the defendant "had indicated that his behavior is so deeply ingrained that he really cannot rehabilitate himself outside of custody without endangering himself and others." The trial court reiterated that the defendant had violated the terms of his probation by his 2008 assault arrest. The trial court imposed a sentence of incarceration based upon its concerns that the defendant "presents too much of a danger to the general public to be out on the streets" and that the defendant "really hasn't proven himself to be a good candidate to be rehabilitated." The defendant timely appealed this judgment.

On appeal, the defendant argues "that he is a good candidate for alternative sentencing and that the court erred in discounting his explanations" concerning his misbehavior while incarcerated locally. He also contends that the trial court erroneously allowed testimony concerning the altercation at the community corrections facility despite the State's failure to produce the video recording of the incident. The State responds that there was substantial evidence of the defendant's lack of amenability to rehabilitation upon which to base the trial court's decision to order the sentence in confinement. Following our review, we agree with the State.

Upon finding by a preponderance of the evidence that a probationer has violated the

terms of his probation, a trial court is authorized to order him to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); see also State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

It was within the trial court's authority to order the defendant to serve his original sentence upon revoking his probation. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002).

There is substantial evidence to support the trial court's revocation of probation in this case. The defendant admitted to the violations at the February 2009 hearing. When offered the opportunity for a sentence less than confinement in the penitentiary, the defendant involved himself in further altercations that showed his lack of amenability to rehabilitation. Furthermore, we deem the defendant's argument concerning the State's failure to produce the video recording unpersuasive. The defendant could have sought the recording through discovery and presented the same. The trial court limited Ms. Johnson's testimony to those facts she observed and made findings based upon his credibility determinations of the witnesses. The defendant's admitted and repeated altercations during the pendency of the trial court's sentencing decision justify the denial of alternative sentencing in this case. Therefore, we conclude that the trial court did not abuse its discretion. Accordingly, the judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE